WILLIAM D. ROBERTS and DAVID M. ARMOUR, members of The United Brotherhood of Maintenance of Way Employes and Railway Shop Laborers, in behalf of themselves and also in behalf of such other members of said Brotherhood as may desire to join as complainants herein, and MAX FICKERT and JOSEPH GREEK, Intervenors,

*vs.*

LEO I. KENNEDY, WILLIAM T. HAINES, CLYDE A. RIEGEL, JOHN T. REDMON, CLYDE L. HAWKINS, JAMES F. OWEN, FRANK B. COLLIER, PEARL D. BALLINGER, A. W. WITKOP, CHARLES B. O'FLANAGAN, WILLIAM H. KANE, WILLIAM C. WEAVER, SR., DANIEL REDMON and CHARLES H. MILLS.

*New Castle, July 29, 1925.*

*David J. Reinhardt*, for complainants.
*J. Frank Ball* and *Robert G. Harman*, for defendants.

THE CHANCELLOR. The question of whether Armour and Roberts, or either of them, ever were members of the United Brotherhood and as such competent to be complainants in this cause was regarded by me as prematurely raised when objection was made to a petition of intervention presented by Max Fickert and Joseph Greek, 14 *Del. Ch.* 267, 125 *A.* 193. It is now properly before the court on the final hearing. If either Armour or Roberts was a member in good standing, the bill was properly filed and must be disposed of on the merits.

I shall not consume time in considering the status of Roberts, nor of the interveners, Fickert and Greek. It is not necessary to do so, because in my opinion the evidence shows Armour to have been a member in good standing qualified to bring the suit at the time of its inception and to have continued such ever since.

The bill was filed in November, 1921. Prior to that time and down to June of that year he had been a member and president of Mazuma Lodge, No. 480, located at Bradford, Ohio. During the same year he became a member in good standing of Local No. 1793 located likewise at Bradford and has ever since been such. Both these lodges are in the territory of the Pennsylvania System Division, a department of the United Brotherhood, and concerning whose affairs the alleged breaches of trust are charged. On what precise day Armour became affiliated with Local No. 1793 does not appear. Whether therefore he was a member of that lodge in November, 1921, when the bill was filed is not shown. But this is of no moment, for if he was not then a member of No. 1793, he was of Mazuma Lodge No. 480. The exact date of his joining No. 1793 is therefore not of importance.

The defendants argue that Armour was not a member of Mazuma Lodge because he became arrear in his dues for 1921 and by reason thereof became suspended by virtue of a by-law in that behalf. I do not think he was in arrear. This is because he was president of Mazuma Lodge and at the time of his election his dues under the law of the lodge were paid for him in advance for one year, down to January 1, 1922. A "working card" showing the payment of his dues up to January 1, 1922, was duly issued to him. Under the constitution of the United Brotherhood (article XV, §1) a "working card" is "evidence of good standing in the Brother-

hood." It is true that on June 26, 1921, Armour's chair as president of Mazuma Lodge was declared vacant in pursuance, I suppose, of a by-law previously adopted on May 9, 1921, declaring that absence of an officer for three consecutive meetings should vacate his office unless his absence is excused by a three-fourths vote. On May 9, 1921, the by-laws were further amended by striking out of article VI the provision for paying in advance the dues of the president. It is this alteration of article VI of the by-laws which the defendants rely on to support their contention that Armour became arrear in his dues because, they say, having ceased to be president on June 26, 1921, and it being no longer lawful to pay the president's dues in advance and he never having himself paid any dues since that date, he was in default and consequently suspended, though attention has not been called to any formal action of suspension against him. The result as claimed by the defendants does not follow from the facts shown. The amendment to the by-law does not purport to have any retroactive effect. It appears to be prospective only in its operation. It did not have the effect of destroying the fact that Armour's dues had already been paid up to January 1, 1922. The premise upon which the argument is founded, that Armour ceased to be a member of Mazuma Lodge when the bill was filed, therefore, does not exist.

It is said also that Armour was not a member of Mazuma Lodge because he was not an "employee" of the Pennsylvania Railroad, or any other railroad, and the constitution of the Brotherhood admits only "employees" of a railroad it its membership. Armour was an employee at one time. He became a Grand Vice President of the Brotherhood and was required by the constitution (article V, § 3) to devote all of his time to the duties of his office. He therefore could not continue to work as an employee of the railroad. If ceasing to work as a railroad employee in order to work exclusively as a Grand Vice President of the Brotherhood automatically ousted him from its membership, we have a curious not to say absurd situation. Under this view, all of the most responsible officers of the Brotherhood would lose their membership the moment they became chosen by their fellows to lead it. Not only would reason deny such an illogical result, but a reading of

the constitution in its entirety likewise shows that it was never intended. See article I, § 11; article III, § 4.

The evidence shows that Armour was a member of the Brotherhood at the time of the institution of the suit and that he has since continued to be a member, and that the local lodges of which he was and is a member were and are in that department of the Brotherhood embraced within the Pennsylvania System Division with which we are here concerned. This is enough to sustain the bill so far as a party complainant is concerned, and makes it unnecessary to examine the testimony concerning Roberts, Fickert and Greek unless some question of costs calls for it. If so, the question may be raised later.

Having determined that the bill is prosecuted by a competent complainant, it is next in order to consider the cause on its merits. The solicitors have allowed the question of parties to so engross their attention as to crowd from sight the general equity of the bill. It is true that the contention is made on the brief of the defendants that the bill is without merit because of the fact that the Pennsylvania System Division took certain proceedings in November, 1921, which deprives any member of the Brotherhood of a right to complain concerning the disposition of the property in question. This contention is made in the form of a bare statement and then left without argument to be disposed of by me. I think the respective solicitors should give me the benefit of their views with respect to it. The cause will, therefore, stand over for further argument on this point at a subsequent date to be fixed, when the question, if any, with respect to the status of Roberts, Fickert and Greek may be raised. With respect to these three, I have assumed that all questions with respect to them cease to have any interest when once it is held that Armour is a competent party, the bill being a class bill.

NOTE.—For supplemental opinion see *post p.* 100.